**[J-47-2024] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| JASON WINIG, | : | No. 32 EAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | February 24, 2023, at No. 1423 CD |
| v. | : | 2021, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Philadelphia County, Civil Division, |
| THE OFFICE OF THE DISTRICT | : | entered on June 21, 2021, at No. |
| ATTORNEY OF PHILADELPHIA, | : | 200600251. |
| LAWRENCE S. KRASNER, ESQUIRE, | : | |
| BRANWEN MCNABB, ESQUIRE, | : | ARGUED: September 10, 2024 |
| MICHELLE MICHELSON, ESQUIRE, | : | |
| WILLIAM BURROWS, ESQUIRE AND | : | |
| HELEN PARK, ESQUIRE, | : | |
| | : | |
| Appellees | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                   **DECIDED: November 19, 2025**

The Majority holds that the failure of the Legislature to explicitly waive the affirmative defense of high public official immunity shields prosecutors from civil suits seeking monetary damages for their alleged violations of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act" or "Act"), 18 Pa.C.S. §§ 5701-5782, that occurred while they were acting within the scope of their official duties. Majority Op. at 2. However, a thorough examination of the complete language of the Wiretap Act, as well as its surrounding legislative history, reveals that the General Assembly intended to allow suits to proceed against "*any person*" for the reasons that follow. 18 Pa.C.S. § 5725(a) (emphasis added). Accordingly, I dissent.

As explained by this Court in *Commonwealth v. Blystone*, 549 A.2d 81, 86 (Pa. 1988), the Wiretap Act "strikes a [careful] balance between citizens' legitimate expectation of privacy and the needs of law enforcement officials to combat crime[,]" as a result of which, "the General Assembly has provided [important] safeguards to protect the [personal] liberties of the citizens of the Commonwealth." *Id.* To protect individual privacy rights, the Act "contain[s] strict guidelines as to how and when electronic surveillance methods shall be permitted." *Boettger v. Miklich*, 633 A.2d 1146, 1148 (Pa. 1993).

Section 5725(a) of the Wiretap Act creates a cause of action for aggrieved individuals to seek monetary damages from "any person" who violates the Wiretap Act. 18 Pa.C.S. § 5725(a). The Wiretap Act defines a "person" as "[a]ny employee or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 Pa.C.S. § 5702. Therefore, as the Majority acknowledges, prosecutors "qualify as 'person[s]' under the Wiretap Act, both as individuals as well as employees of Philadelphia, a political subdivision of the Commonwealth of Pennsylvania[]" and "technically fit within the broad category of 'persons' that may face suit pursuant to Section 5725(a)." Majority Op. at 15.

Section 5725(b) goes on to waive "the doctrine of sovereign immunity" by stating that "to the extent that the Commonwealth and *any of its officers, officials*[,] *or employees* would be shielded from liability . . . such immunity is hereby waived for the purposes of this section." 18 Pa.C.S. § 5725(b). Therefore, the Wiretap Act subjects "any person" who violates the Act to civil liability for their actions.

In reaching the conclusion that the General Assembly intended by its silence to not waive the affirmative defense of high public official immunity, the Majority engages in a statutory interpretation analysis. When courts engage in textual interpretation, they can, and should, consider the context of surrounding statutes, case law, and legislative history.

*See, e.g.*, *Mimi Investors, LLC v. Tufano*, 297 A.3d 1272, 1289 (Pa. 2023) (Mundy, J., concurring) ("[A]ny textual interpretation . . . can take into account such factors as the context in which the words appear, historical considerations, dictionary definitions . . . , and the reasoning of other courts and commentators[.]" (emphasis omitted)).

When examining the context of surrounding statutes and legislative history, it is evident that the intent of the legislature was to waive all forms of immunity protecting the Commonwealth and its officials, and allow suits to proceed for violations of the Wiretap Act. First, the current codification of high prosecutorial immunity was not in effect when the Wiretap Act was passed. Second, the legislature clearly intended to waive all forms of sovereign immunity existing at the time. Based on this history, to conclude that individuals in law enforcement have immunity in a cause of action where the statute explicitly states, "to the extent that the Commonwealth and any of its *officers, officials or employees* would be shielded from liability . . . such immunity is hereby waived for the purposes of this section[,]" 18 Pa.C.S. § 5725(b) (emphasis added), would be an absurd result.

A brief recitation of the legislative history surrounding the enactment of the Wiretap Act is instructive. In 1973, this Court abolished the common law defense of governmental immunity, *see Ayala v. Phila. Bd. of Pub. Ed.*, 305 A.2d 877, 881-83 (Pa. 1973), and in 1978, this Court similarly eliminated the doctrine of sovereign immunity regarding claims against Commonwealth entities, *see Mayle v. Pa. Dep't of Highways*, 388 A.2d 709, 720 (Pa. 1978). In response to these decisions, in September of 1978, the General Assembly enacted P.L. 778, No. 152 ("Act 152"), reinstating the doctrine of sovereign immunity. 42 Pa.C.S. § 5110 reenacted at 42 Pa.C.S. § 8522. Then, on October 4, 1978, one week after the effective date of Act 152, the same General Assembly enacted the Wiretap Act, including the "waiver of sovereign immunity" provision. *See* 18 Pa.C.S. § 5725(b). When

the Act went into effect, the statutory sovereign immunities now codified in Pennsylvania's Tort Claims Acts did not exist. It was not until October 5, 1980 — two years after the Wiretap Act became effective — that the General Assembly enacted what are commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-8564 ("PSTCA"), and the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8528 ("SIA").

Because the PSTCA and SIA were enacted after the passage of the Wiretap Act, the General Assembly could not, as the Majority contends, have intended to refer to our modern conception of sovereign immunity. Instead, it is clear that the General Assembly was referring to sovereign immunity in the common law context, which would include governmental immunity, official immunity, high public official immunity, and prosecutorial immunity.[1]

With this context, when examining the language of Act 152, the statutory affirmation of the Commonwealth's sovereign immunity, *see* 1 Pa.C.S. § 2310, it is clear that the General Assembly intended to treat "sovereign and official immunity" as a combined legal principle:

> [T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity *and official immunity* and remain immune from suit except as the General Assembly shall specifically waive *the immunity*. When the General Assembly specifically waives *sovereign immunity*, a claim against the Commonwealth and its officials and employees [must be brought in the manner proscribed in the relevant law.]

---

[1] As discussed *supra*, when the General Assembly determined that any waiver of "the immunity" had to be specific and explicit, it treated sovereign and high public official immunities as one immunity for purposes of waiver. *See* 1 Pa.C.S. § 2310 ("[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign *and official immunity* and remain immune from suit except as the General Assembly shall specifically waive *the immunity*." (emphasis added)).

*Id.* (emphasis added). The General Assembly's use of the definite article "the" when referring to the Commonwealth's ability to "waive *the* immunity" in the same sentence as "sovereign *and* official immunity" demonstrates that the General Assembly intended to treat the two immunities interchangeably. *Id.* (emphasis added). *See also* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). In other words, the General Assembly considered the immunities to be so interrelated that it could waive both sovereign and high public official immunity by only explicitly waiving "sovereign immunity." This interpretation comports with the history of the immunities because sovereign and high public official immunity are essentially two halves of the same coin, as sovereign immunity prevents a government entity from being sued without its consent while high public official immunity prevents government officials from being sued without the government's consent. *See, e.g.*, *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017) ("[T]he principle of high public official immunity, while serving a unique role in protecting public officials while acting in their official capacity on behalf of the public, is grounded in the same general, overarching principle of immunity for the public good, as *derived from the English concept of sovereign immunity*." (emphasis added)).

Further, as stated above, the same General Assembly passed Act 152 and the Wiretap Act, meaning that the General Assembly possessed the same knowledge of dictionary definitions, terms of art, and context, and intentionally chose to use identical language. Therefore, it is a reasonable conclusion that the General Assembly also intended the same construction of the term "sovereign immunity." As Act 152 actively uses the phrase "sovereign immunity" to refer to both sovereign and high public official immunity, as discussed *supra*, the Wiretap Act, a statute passed merely a week later, should be interpreted in the same manner.

This reading is further supported by the Wiretap Act itself, specifically by Sections 5713.1, 5717, and 5726. Taking each section in turn, Section 5713.1(c) refers to defenses for "civil or criminal actions" against persons for violations that could only occur via the actions of law enforcement officers in emergency hostage and barricade situations. 18 Pa.C.S. § 5713.1. Similarly, Section 5717(a) authorizes the disclosure of information to "the extent that such disclosure is appropriate to the proper performance of official duties of the officer making or receiving the disclosure." 18 Pa.C.S. § 5717(a). Finally, Section 5726(a) creates an "action" in the Commonwealth Court for the removal of a law enforcement officer or public official from office if the officer "intentionally" violated provisions of the act. 18 Pa.C.S. § 5726(a).

However, under the Majority's interpretation of the Wiretap Act, these provisions would be rendered mere surplusage and would lead to absurd results if high public official immunity exists in the Act, given that the immunity protects public officials who were acting "within the scope of their official duties." *See* 1 Pa.C.S. § 2310. For example, the defense outlined in Section 5713.1(c) would be unnecessary, given that conducting wiretaps in an official capacity would be well "within the scope of the[ officers'] official duties." Further, Section 5717(a)'s authorization to disclose information discovered in wiretaps would no longer be necessary because all persons defined as law enforcement officers under the Act would be immune from suit under high public official immunity. Finally, officials would not need the good faith defense articulated in Section 5726(b) because those actions would be prevented under high public official immunity. In other words, it does not make sense for these provisions to exist if the officers cannot be held liable because of high public official immunity. Thus, the Statutory Construction Act's requirement for this Court to avoid "absurd, impossible to execut[e] or unreasonable" interpretations should be

controlling, which supports the conclusion that the affirmative defense of high public official immunity is waived by Section 5725(b).  1 Pa.C.S. § 1922.

For these reasons, I dissent.

Justice McCaffery joins this dissenting opinion.